UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GEFFEN, | No. 2:17-cv-01346-TLN-CKD |
| Plaintiff, | |
| v. | **ORDER** |
| WESTIN MONACHE RESORT, et al., | |
| Defendants. | |

This matter is before the Court on Defendants Westin Monache Resort, Starwood Hotels & Resorts Worldwide, Inc., Intrawest Hospitality Management, Inc., and Intrawest Hospitality Management LLC's ("IHM")[1] Motion for Summary Judgment. (ECF No. 35.) Plaintiff David Geffen ("Plaintiff") filed an opposition. (ECF No. 37.) Defendants filed a reply. (ECF No. 43.)

Also before the Court is Plaintiff's Motion for Summary Judgment. (ECF No. 46.) Defendants filed an opposition. (ECF No. 49.) Plaintiff filed a reply. (ECF No. 50.)

For the reasons set forth below, the Court GRANTS Defendant's motion (ECF No. 35) and DENIES Plaintiff's motion (ECF No. 46).

///

---

[1] Defendants argue none of the named Defendants exist, with the exception of IHM. (ECF No. 35 at 8 n.2.) However, to the extent the named Defendants jointly move for summary judgment on the same grounds, the Court will reference Defendants collectively.

1

## I.     Factual and Procedural Background

This case arises from Plaintiff's alleged inability to book an accessible room at the Westin Monache Resort (the "Resort"). The Resort — located at 50 Hillside Drive, Mammoth Lakes, California (the "Property") — is not a traditional hotel. The Property consists of residential condominiums, common areas, and commercial areas. (ECF No. 35-1 at 3–4.) IHM owns commercial areas on the Property, such as the restaurant, conference rooms, lobby bathrooms, front desk, and "employee only" space behind the front desk. (*Id.* at ¶ 7.) The Monache Condominium Owners Association (the "Association") owns certain common areas of the Property, such as the pool, gym, and parking structure. (*Id.* at ¶ 6.) The residential units are privately owned. (*Id.* at ¶ 5.) If residential unit owners choose to rent their unit to a third party, they may do so on their own, through an independent rental program, or through a nightly rental program run by IHM in partnership with Westin (the "Nightly Rental Program"). (*Id.*) IHM contracts with Westin to provide the Nightly Rental Program under the Westin brand and also separately contracts with the individual condominium owners who opt to rent their units through the Nightly Rental Program ("participating residential units"). (*Id.* at ¶¶ 5, 8.)

Plaintiff is paralyzed from the chest down and requires a wheelchair for mobility. (ECF No. 49-5 at 14.) Plaintiff alleges he contacted the Resort in the summer of 2015 to book a room for a family vacation. (ECF No. 7 at 4.) Plaintiff alleges he was unable to secure an accessible room due to floor-length cabinetry under the bathroom sinks (the "cabinetry"). (*Id.*) More specifically, Plaintiff alleges he left a message with the Resort asking whether the cabinetry was removable. (ECF No. 41 at 2.) A Resort employee called Plaintiff back and left a message stating that none of the rooms have an open space in the sink because of the cabinetry. (*Id.*) As a result, Plaintiff cancelled his reservation and was unable to attend his family vacation. (*Id.* at 3.)

On June 30, 2017, Plaintiff brought this action against Defendants alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213 ("ADA"), as well as California Civil Code §§ 51, 54, and 54.1. (*See generally* ECF Nos. 1, 7.) Defendants filed a motion for summary judgment on September 13, 2019 (ECF No. 35), and Plaintiff filed a motion for summary judgment on October 17, 2019 (ECF No. 46).

**II.     STANDARD OF LAW**

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. at 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### III. ANALYSIS

Defendants move for summary judgment as to all of Plaintiff's claims, which Defendants argue are limited to allegations regarding the cabinetry. (ECF No. 35 at 8–9.) In opposition, Plaintiff vaguely argues he is bringing claims based on other barriers and discriminatory policies.[2]

---

[2] Although the operative First Amended Complaint ("FAC") includes boilerplate allegations that Defendants violated the ADA in various ways, the factual allegations therein only relate to Defendants' refusal to remove the cabinetry in 2015. (*See* ECF No. 7 at 4.) To the extent Plaintiff now asserts claims arising from separate violations in 2019 — including claims about deficiencies in the online reservation system — Plaintiff did not seek leave to amend or supplement the FAC to include these claims. Therefore, Plaintiff's claims regarding distinct violations from 2019 are not properly before the Court and will not be considered. *See Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 909 (9th Cir. 2011) ("[F]or purposes of Rule 8, a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself; a defendant is not deemed to have fair notice of barriers identified elsewhere."). To the extent Plaintiff asserts other claims related to the incident in 2015, Plaintiff

1   (ECF No. 37 at 16.)  In his motion for summary judgment, however, Plaintiff only seeks
2   adjudication of "a single ADA violation" — Defendants' refusal to remove the cabinetry.  (ECF
3   No. 50 at 7.)  The Court will address Plaintiff's ADA claim and state law claims as to the
4   cabinetry in turn.

5              A.      <u>ADA Claim</u>

6   Plaintiff argues the cabinetry is a barrier that must be removed under the ADA.  (ECF No.
7   7 at 6; ECF No. 46 at 11.)  The Court gleans three potential grounds for liability from Plaintiff's
8   meandering briefing.  First, Plaintiff argues the cabinetry violates the ADA because it is
9   immovable.  (ECF No. 50 at 8).  Second, in response to Defendants' argument that the cabinetry
10  is and always has been movable upon request (*see* ECF No. 35 at 10, 14), Plaintiff argues even if
11  the cabinetry has always been removable, the ADA requires Defendants to remove the cabinetry
12  *permanently*.  (*See* ECF No. 46 at 16–17.)  Third, as a last resort, Plaintiff argues Defendants
13  violated the ADA "at least once in 2015" when Plaintiff called Defendants to ask whether the
14  cabinetry could be removed and was told by a Resort employee that it could not.  (*Id.* at 16.)  The
15  Court will address Plaintiff's first and second arguments (which the Court construes as an
16  "architectural barrier" claim) and then Plaintiff's third argument (which the Court construes as a
17  "discriminatory policy" claim).

18                i.      *Architectural Barrier Claim*

19  Title III of the ADA sets forth in relevant part: "No individual shall be discriminated
20  against on the basis of disability in the full and equal enjoyment of the goods, services, facilities,
21  privileges, advantages, or accommodations of any place of public accommodation by any person
22  who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. §
23  12182(a).  Title III specifically requires entities providing public accommodations to "remove
24  architectural barriers . . . where such removal is readily achievable."  *Id.* § 12182(b)(2)(A)(iv).

---

fails to develop such claims and instead appears to pursue only claims regarding the cabinetry. (ECF No. 50 at 7.)  As such, the only claims properly before the Court are those regarding the cabinetry.

5

"A permanent structural change to a building or surrounding fixtures . . . qualifies as an 'architectural barriers' claim." *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1012 (9th Cir. 2017).

Defendants argue the Court should grant summary judgment in their favor on Plaintiff's architectural barrier claim because they do not own, lease, or operate the residential units. (ECF No. 35 at 15.) It is undisputed that Defendants do not "own" or "lease" the residential units. (*See* ECF No. 37-1 at 2 ("Each Condominium owner has full title to their unit.").) Therefore, in order to be subject to ADA liability for architectural barriers within the residential units, Plaintiff must show Defendants "operate" those units. *See* 42 U.S.C. § 12182(a).

"The ADA does not define 'operates.'" *Johnson v. Compton*, No. 2:16-cv-02961-JAM-CKD, 2017 WL 1353801, at *2 (E.D. Cal. Apr. 10, 2017). "The Ninth Circuit has stated 'to operate means to put or keep in operation, to control or direct the functioning of, or to conduct the affairs of; manage.'" *Id.* (citing *Lentini v. Cal. Cent. for the Arts*, 370 F.3d 837, 849 (9th Cir. 2004)). "Put simply, courts must ask whether the defendant 'had the power to facilitate any necessary accommodation.'" *Id.* (citing *Lentini*, 370 F.3d at 849); *see also U.S. v. Days Inns of Am.*, No. CIV. S-96-260 WBS/GGH, 1998 WL 461203, at *6 (E.D. Cal. Jan. 12, 1998) ("[T]he relevant inquiry [is whether the defendant has] control over the discriminatory conditions.").

Defendants argue they do not have control "to alter the interiors of the units to make the units accessible." (ECF No. 35 at 15 (emphasis removed).) Conversely, Plaintiff argues participating residential unit owners cede "significant control" of their units. (ECF No. 37 at 15; ECF No. 50 at 6–7.) Plaintiff relies almost exclusively on the Resort's Covenants, Conditions, and Restrictions ("CCRs") to support the proposition that Defendants had sufficient control to render them "operators" under the ADA. (ECF No. 50 at 5–6; *see* ECF No. 46-3 at 5.) Plaintiff emphasizes that, under the CCRs, IHM is the "Hotel Operator" responsible for ensuring the "Hotel" portions of the Resort meet "Hotel Standards." (ECF No. 50 at 5–6.) The CCRs broadly define "Hotel Standards" as "systems, standards, and policies . . . which the Hotel Operator is required to uphold and enforce in order to comply with its own or its licensor's branding and operating standards, including . . . standards of upkeep and maintenance." (ECF No. 38 at 19.)

6

1    Even if IHM acts as the "Hotel Operator" as defined by the CCRs, however, Plaintiff does not
2    cite — nor can the Court locate — any portion of the CCRs giving the "Hotel Operator" the
3    power to control the physical layout inside residential units to ensure ADA compliance.
4         In addition to the CCRs, Plaintiff also argues Defendants control participating residential
5    units through nightly rental contracts that demand adherence to "Westin brand standards" as set
6    forth in the licensing agreement between Westin and IHM. (ECF No. 50 at 6.) There is scant
7    evidence about the terms of the agreements at issue. The parties have not provided the licensing
8    agreement between IHM and Westin, nor have they provided the nightly rental contracts between
9    IHM and participating residential units. The only evidence Plaintiff cites that gives any hint as to
10   Defendants' contractual obligations comes from the deposition of Eric Clark, the Vice President
11   of IHM. (ECF No. 37 at 15 (citing ECF No. 38 at 162–63); *see also* ECF No. 50 at 6.) More
12   specifically, Clark testified that IHM performs necessary maintenance, repairs, and housekeeping,
13   and also ensures that amenities within participating units (such as glassware and furniture) are
14   uniform to brand standards. (ECF No. 46-3 at 161–62.) Clark further testified that in order to
15   remain in the Nightly Rental Program, the owner of a participating residential unit must pay for
16   any upgrades necessary to meet Westin brand standards. (*Id.* at 163.)
17        The record is insufficient to create a genuine dispute of material fact as to whether
18   Defendants "operate" the discriminatory condition for the purposes of ADA liability. First, there
19   is no evidence Defendants are contractually obligated to ensure that the interiors of participating
20   rental units are accessible. When asked whether the nightly rental contracts include accessibility
21   standards, Clark stated, "Not to my knowledge." (*Id.* at 161.) Plaintiff argues Westin brand
22   standards include accessibility standards because Clark testified Westin representatives toured the
23   Property and looked at the pool lift. (ECF No. 50 at 6; *see* ECF No. 46-3 at 164–65.) Clark's
24   vague statement about Westin's accessibility assessment of the pool lift and hallways, which are
25   located in common areas of the Resort owned by the Association, is insufficient to suggest that
26   Westin brand standards impose any accessibility standards to the interior of participating rental
27   units. (*See* ECF No. 46-3 at 164–65.)
28   ///

7

Second, even if Westin brand standards require ADA compliance within participating residential units, there is no evidence that the contracts give Defendants authority to make permanent structural changes to ensure such compliance. The unit owners ultimately decide whether to make necessary changes at their own expense. (*Id.* at 162–63.) It appears that the extent of Defendants' control over the alleged discriminatory condition is to remove a unit from the Nightly Rental Program if the owner does not comply with Westin brand standards (*see id.*), which is insufficient to hold Defendants liable as "operators" under the ADA. *See Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1068–69 (5th Cir. 1995) (concluding Dairy Queen was not an "operator" of a franchise under the ADA even though the franchising agreement gave Dairy Queen the right to set standards for building and equipment maintenance and to veto proposed structural changes at the franchise); *Lemmons v. Ace Hardware Corp.*, No. 12-cv-03936, 2014 WL 3107842, at *7 (N.D. Cal. Jul. 3, 2014) (granting summary judgment to Ace Hardware on plaintiff's ADA claims because the right to terminate the franchise agreement if the franchisee failed to comply with federal and state laws did not "grant Ace the 'specific control' necessary to impose liability on it" and there was "no evidence to show that Ace retained the authority under the agreement to dictate the physical layout of the store"); *Days Inns*, 1998 WL 461203, at *6 (granting summary judgment to Days Inn because "even if Days Inn were found to 'control' individual hotels' day-to-day activities," Days Inn did not have "control over the discriminatory conditions" of the franchise and therefore was not an operator under the ADA); *Johnson*, 2017 WL 1353801, at *2–3 (granting summary judgment in favor of a RV rental company, finding the company was not an "operator" of premises under the ADA because it did not have the power make physical changes or dictate the physical layout of the alleged discriminatory conditions); *O'Byrne v. Reed*, 2010 WL 11596710, No. CV 09-08406 DMG (DTBx), *3 (C.D. Cal. Aug. 6, 2010) (granting summary judgment for agents who rented vacation homes to third-parties on behalf of the homeowners because although the agents managed the vacation rentals "in a limited sense," the agents were "not authorized to make structural modifications to the vacation rentals"); *Zamora v. Wendy's Int'l, LLC*, 2020 WL 3469331, No. 19-CV-06133-LHK, *5–7 (N.D. Cal. June 25, 2020) (concluding allegations that the defendant "operates all Wendy's-branded restaurants

8

1 by implementing, maintaining, and enforcing the Wendy's System" was insufficient to state an
2 ADA claim).

3      In sum, there is no evidence to suggest Defendants had any power — or even any
4 obligation — to modify the physical layout within participating rental units to ensure ADA
5 compliance. *See O'Byrne*, 2010 WL 11596710, at *5 ("Defendants cannot face ADA liability for
6 a situation that they neither created nor have the power to alter."). It also bears mentioning that
7 the Department of Justice's ADA regulations carve out an exception to the barrier removal
8 requirement for exactly this type of scenario. *See* 28 C.F.R. § 36.304(g)(4) (stating the barrier
9 removal requirement "does not apply to guest rooms in existing facilities that are places of
10 lodging where the guest rooms are not owned by the entity that owns, leases, or operates the
11 overall facility and the physical features of the guest room interiors are controlled by their
12 individual owners"). Thus, to the extent Plaintiff claims Defendants violated the ADA by failing
13 to *permanently* remove the cabinetry or make any other structural changes inside the residential
14 units, such a claim fails as a matter of law.

15                     *ii.*    *Discriminatory Policy Claim*

16      Alternatively, Plaintiff argues he has a viable ADA claim because Defendants refused to
17 remove the barrier "at least once in 2015" when a Resort employee told Plaintiff the cabinetry
18 could not be moved. (ECF No. 46 at 16.) With this argument, Plaintiff seems to reframe his
19 "architectural barrier" claim under 42 U.S.C. § 12182(b)(2)(A)(iv) as a "discriminatory policy"
20 claim under 42 U.S.C. § 12182(b)(2)(A)(ii). (*See* ECF No. 37 at 16; ECF No. 46 at 16.) A
21 discriminatory policy claim arises from "[a] failure to make reasonable modifications in policies,
22 practices, or procedures, when such modifications are necessary to afford such goods, services,
23 facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the
24 accommodation would fundamentally alter the nature of such goods, services, facilities,
25 privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

26      Defendants argue Plaintiff cannot reframe his architectural barrier claim as a policy claim.
27 (ECF No. 49 at 14.) It is unclear whether Plaintiff's claim "plausibly could fit within more than
28 one of [the ADA's] . . . illustrative examples of discrimination." *See Karczewski*, 862 F.3d at

9

1012.  Assuming without deciding that Plaintiff may raise a discriminatory policy claim under these circumstances, however, such a claim fails for two reasons.

First, implicit in Plaintiff's argument is that, even if the cabinetry is and always has been "easily removable," Defendants have a policy or practice of refusing to remove the cabinetry for disabled guests and failed to modify that policy despite Plaintiff's request.  (*See* ECF No. 37 at 16.)  When asked whether the cabinetry could be removed, a Resort employee told Plaintiff that none of the rooms have an open space in the sink because of the cabinetry.  (*Id.*)  Assuming that Plaintiff's general inquiry about the cabinetry qualifies as a "request," Plaintiff presents no evidence to suggest that the employee acted pursuant to a specific Resort policy as opposed to this being an isolated error.  (ECF No. 41 at 2.)

Second, even if there *was* a discriminatory policy to deny requests to remove cabinets in 2015, there is no evidence that such a policy still exists or that Defendants would deny requests to remove the cabinetry at present.  To the contrary, Clark's declaration states "[r]equests to remove undersink bathroom vanity cabinets are always accommodated" and "it takes less than 4 minutes to remove one of these cabinets."  (ECF No. 35-1 at 5.)  Plaintiff does not refute this evidence, and even admits he was told the cabinetry was removable when he called the Resort again in 2019.  (ECF No. 49-3 at 6.)   Therefore, to the extent Plaintiff intends to raise a discriminatory policy claim for the incident in 2015, such a claim is moot because the ADA only provides injunctive relief and there is no evidence to suggest the alleged discriminatory policy still exists. *See Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988) ("The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted."); *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1174 (9th Cir. 2010) ("Injunctive relief is the sole remedy available to private parties under the [ADA]; it does not authorize a claim for money damages.").  There is also no indication that future violations are reasonably likely to recur.  *See, e.g.*, *Moore v. Saniefar*, No. 1:14-cv-01067-SKO, 2017 WL 1179407, at *7 (E.D. Cal. Mar. 29, 2017) ("Th[e] absence of a pertinent history of violations — or any evidence of Defendants' intention to again violate the ADA — indicates that future violations are not reasonably likely to occur.").

10

Accordingly, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's ADA claim.

### B. State Law Claims

Defendants next argue the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. (ECF No. 35 at 23–24.) Plaintiff does not raise any arguments as to supplemental jurisdiction or otherwise request the Court to retain his state law claims in the event the ADA claim — his only federal claim — is dismissed.

Once a court has dismissed all federal claims, it may decline to exercise jurisdiction over pendent state law claims. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction where all claims over which the court has original jurisdiction have been dismissed); *Carnegie-Mellon Univ. v. Cohill, Inc.*, 484 U.S. 343, 350 n.7 (1988) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

In the instant case, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. The ADA claim upon which the state law claims are predicated has been adjudicated in its entirety. The ADA claim provided the only basis for federal jurisdiction. Further, the state law claims for money damages substantially predominate over the ADA claim, which provides only for injunctive relief. Plaintiff's entitlement to monetary damages, if any, arises exclusively under state law. Thus, the Court DISMISSES Plaintiff's state law claims.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's ADA claim (ECF No. 35) and DENIES Plaintiff's Motion for Summary Judgment (ECF No. 46) in its entirety. Further, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and DISMISSES those claims without prejudice. The Clerk of Court is directed to enter judgment in favor of Defendants as to Plaintiff's ADA claim and close the case.

IT IS SO ORDERED.

DATED: July 19, 2021

Troy L. Nunley
United States District Judge